UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANA JOYNER,                                         Case No. 1:16-cv-507

       Plaintiff,                                     Barrett, J.
                                                     Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Jana Joyner filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

    **I.  Summary of Administrative Record**

Plaintiff filed an application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) in January 2013, alleging disability as of September 30, 2012, due to a combination of physical impairments. (Tr. 11, 197, 204, 235). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On September 18, 2014, ALJ Gregory Kenyon held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and impartial vocational

1

expert Charlotta Ewers. (Tr. 27-48). On October 31, 2014, the ALJ denied Plaintiff's applications in a written decision. (Tr. 8-21).

Plaintiff was born in 1966 and was 45 years old at the time of her alleged onset date of disability. She has a high school education and previously worked as a machine tender and day worker. (Tr. 19). She alleges disability primarily due to back pain, obesity, diarrhea, and depression. Plaintiff's date last insured under the Social Security Act is December 31, 2016.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative disc disease of the lumbosacral spine; residuals of the surgical removal of a pseudomyxoma of the peritoneum; exogenous obesity; and mild depression." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> (1) occasional crouching; crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; and (4) limited to unskilled, simple, repetitive tasks.

(Tr. 16). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform her past relevant work, significant other jobs exist in the national economy that Plaintiff could perform including charge account clerk, lens inserter and weight tester. (Tr. 20). Accordingly, the ALJ

determined that Plaintiff is not under disability as defined in the Social Security Regulations, and is not entitled to DIB and or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to give controlling weight to Plaintiff's treating physicians; 2) improperly evaluating Plaintiff's mental impairments; 3) improperly evaluating Plaintiff's credibility; and 4) failing provide a hypothetical question to the vocational expert that accurately portrayed Plaintiff's impairments. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of opinion evidence*

Plaintiff's first assignment of error asserts that the ALJ failed to properly weigh the opinion evidence. Specifically, Plaintiff asserts that the ALJ's RFC is not supported by substantial evidence because he erred in evaluating the findings of her treating orthopedist, Jennifer Smail, M.D.

Here, the record contains the following opinion evidence relating to Plaintiff's physical impairments:

In May 2013, Plaintiff had a consultative examination with Phillip Swedberg M.D., at the request of the state agency. (Tr. 319-326). She stated her main complaint was low back pain, for which she received pain management. (Tr. 319). She denied weakness or numbness over the legs, had no history of instability or falls, and was still able to drive despite her pain. (Tr. 319). On exam, Plaintiff was noted to be obese, she ambulated with a normal gait, was comfortable in both the sitting and supine positions, but she had "slight difficulty forward bending." (Tr. 320- 321). However, Dr. Swedberg noted that "the remainder of the musculoskeletal and neuromuscular examination was within normal limits. There was no evidence of radiculopathy." (Tr. 321). Manual muscle

5

testing showed full strength in every muscle, no muscle spasm or atrophy, and normal range of motion in every joint except for slightly reduced range in the dorsolumbar spine (Tr. 322-325). Dr. Swedberg did state that "[o]besity contributes to symptoms, and weight reduction would diminish her complaints." (Tr. 321).

Finally, Dr. Swedberg concluded that Plaintiff was "capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 321). In addition, she had "no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations nor are there environmental limitations." (Tr. 321).

Later in May 2013, Jeffrey Vasiloff, M.D., evaluated Plaintiff's medical records for the state agency. (Tr. 50-56). Dr. Vasiloff found that Plaintiff could lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (Tr. 55). This was consistent with light exertional work. 20 C.F.R. § 404.1567(b). Dr. Vasiloff opined that because of spinal arthritis, Plaintiff could frequently crawl, crouch, kneel and stoop; only occasionally climb stairs and ramps; and never climb ladders, ropes or scaffolds. (Tr. 55-56). In support, Dr. Vasiloff described some of her prior physical health records, including the mostly unremarkable examination conducted by Dr. Swedberg. (Tr. 53).

In September 2013, Edmond Gardner, M.D., completed a separate review of Plaintiff's file for the state agency. (Tr. 75-81). He also indicated Plaintiff could perform light exertional work with the same postural limitations opined by Dr. Vasiloff, and noted that the new medical evidence of record on reconsideration included an "essential normal exam." (Tr. 80-81).

6

On April 23, 2014, Plaintiff's family physician, Jennifer Smail, M.D., completed an assessment form sent to her by Plaintiff's attorney. (Tr. 498-501). Dr. Smail noted that Plaintiff was diagnosed with back pain, degenerative disc disease, and radiculopathy, but that she had a "good" prognosis with physical therapy. (Tr. 498). Dr. Smail noted that an MRI showed degenerative disc disease at L4-L5, broad based disc bulge, and stenosis, and that Plaintiff had leg weakness and stabbing pain. (Tr. 498). Dr. Smail checked boxes indicated positive straight leg raise on the right, muscle weakness, tenderness, and impaired sleep. Notably, Plaintiff had no reduction in range of motion, no sensory loss, a normal gait, no muscle spasm or atrophy, and no swelling. (Tr. 498-499). Dr. Smail did not think Plaintiff's emotional impairments contributed to symptom severity or functional limitation, nor did she note any medication side effects. (Tr. 499). Dr. Smail checked boxes indicating that Plaintiff sit 10 minutes at a time for about 2 hours per work day, stand/walk 10 minutes at a time for about 2 hours per work day, and that Plaintiff must walk every 10 minutes for about 10 minutes. (Tr. 500). She thought Plaintiff could occasionally lift and carry less than 10 pounds, and that due to "documented difficulty of hand function" that she would have significant limitations with reaching, handling, and fingering, although she failed to specify exact restrictions in these areas. (Tr. 500-501). Finally, she checked a box indicated that Plaintiff would be absent from work more than four days per month. (Tr. 501).

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant

7

evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

In formulating Plaintiff's RFC, the ALJ gave Dr. Smail's findings "little" weight. In so concluding, the ALJ found that Dr. Smail's restrictive opinion lacked support from the overall medical evidence of record. (Tr. 17). The ALJ also gave some weight to the findings of the state agency physicians who reviewed the record in May and September 2013 and determined that Plaintiff was not disabled and was capable of a range of light work. (Tr. 16). However, after the administrative hearing, the ALJ determined that additional limitations were supported. (Tr. 19). As such, the ALJ's RFC finding included greater restrictions than those found by the state agency physicians. The ALJ also credited Dr. Swedburg's opinion that Plaintiff was "capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 16, 321). Upon careful review, the undersigned finds that the ALJ's findings in this regard are substantially supported.

With respect to Dr. Smail, the ALJ explained that he gave little weight to Dr. Smail's conclusion because her assessment form was not supported by the evidence of record, including the "very modest level of treatment the claimant had for her back pain complaints, or by the MRI imaging evidence." (Tr. 17). See 20 C.F.R. § 404.1527(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

As the ALJ noted, an MRI in September 2010 showed multilevel degenerative disc disease, with multiple "small" disk bulges. (Tr. 14, 357-358). Plaintiff saw Dr. Smail a month later for back pain, and she was referred to a Dr. Pham, but only saw him once, but she was afraid of getting a steroid shot. (Tr. 318). Plaintiff did not appear to return to

9

Dr. Smail until April 2013 when she complained of increasing pain. (Tr. 312-318). At that time, Dr. Smail decided to refer her to physical therapy since Plaintiff had not tried that before. (Tr. 317-318). However, in February 2014, Plaintiff reported that although she attended some physical therapy, she had not received any steroid injections. Furthermore, while the ALJ noted that Dr. Smail stated surgery would be needed "eventually," she told Plaintiff in May 2014 not to follow-up for 6 months. (Tr. 18, 521)

As detailed above, diagnostic testing showed mostly mild to moderate abnormalities, and examinations were mostly unremarkable. As the ALJ noted "[w]hen examined by Dr. Swedberg, the claimant was noted to be comfortable sitting. She was noted to have normal range of motion in the cervical spine, and only mildly decreased range of motion in the lumbosacral spine." (Tr. 18, 319-325). S*ee Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) (We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion [that Plaintiff was not disabled] . . . ."). Dr. Swedberg noted that Plaintiff ambulated with a normal gait, manual muscle testing showed full strength in every muscle, and no muscle spasm or atrophy. (Tr. 322-325). *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions."). Notably, none of Plaintiff's other physicians opined that she was disabled or had such restrictive work related limitations. *Price v. Comm'r of Soc. Sec.,* 342 F. App'x 172, 177 (6th Cir. 2009) ("As the ALJ's review of the administrative record indicates, no other treating or consultative physicians concluded that Price was disabled.").

The ALJ also properly weighed the opinions of Dr. Vasiloff and Dr. Gardner that Plaintiff could perform a reduced range of light work. (Tr. 16, 55-66, 80-81). In this regard, the ALJ recognized that Dr. Vasiloff's and Dr. Gardner's assessments did not adequately take into account all of Plaintiff's limitations. (Tr. 16, 55-56, 80-81). Specifically, the ALJ wrote that Plaintiff "has been limited to sedentary work to take into account the effects of her spinal problems, as well as the residuals of her abdominal surgery." (Tr. 18). Moreover, as noted by the ALJ, her RFC was consistent with Dr. Swedberg's opinion that Plaintiff was "capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 16, 321).

In light of the foregoing, the ALJ properly discounted Dr. Smail's opinion because it was inconsistent with the evidence in the record *See* 20 C.F.R. § 404.1527(d)(4) (*"Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). *See Payne v. Comm'r of Soc. Sec.,* 402 Fed.Appx. 109, 112–13 (6th Cir. 2010) (ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes).

In sum, the ALJ's decision indicates that he thoroughly considered the medical evidence and treatment history and properly found that they did not support a finding of disability.

*2. Evaluation of Mental Impairments*

Plaintiff next argues that the ALJ's mental RFC limiting her to "unskilled, simple, repetitive tasks" does not properly account for her mental limitations. *Citing Ealy v.*

11

*Commissioner,* 594 F.3d 504 (6th Cir. 2009), Plaintiff also asserts that the ALJ's mental RFC and hypothetical question failed to properly accommodate her moderate limitation in concentration, persistence or pace due to her mild depression.

In *Ealy*, the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue*, No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, as is in *Ealy*, and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

For these reasons, the undersigned finds no merit in this assignment of error.

*3. Credibility*

Plaintiff next argues that the ALJ erred in evaluating her credibility. Specifically, Plaintiff contends that the ALJ improperly evaluates her subjective statements about the intensity, persistence and limiting effects of her symptoms, as well as her reported activities of daily living. Plaintiff further asserts that the ALJ did not consider the side effects of her medications. Plaintiff's assertions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the

13

individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir. 2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making his credibility determination. Here, the ALJ determined that Plaintiff's complaints of disabling pain were only partially credible in light of the objective evidence, Plaintiff's inconsistent statements and her reported daily activities.

As noted by the Commissioner, in accordance with the regulations, the ALJ discussed the objective evidence and noted that despite Plaintiff's complaints of back pain, objective findings yielded mostly normal results. As noted by the Commissioner, while she had "slight difficulty forward bending," Dr. Swedberg noted that "the remainder of the musculoskeletal and neuromuscular examination was within normal limits. There was no evidence of radiculopathy." (Tr. 320- 321). Moreover, manual muscle testing showed full strength in every muscle, no muscle spasm or atrophy, and normal range of motion in every joint except for slightly reduced range in the dorsolumbar spine (Tr. 322-325).

In addition, the ALJ considered that Plaintiff did not comply with recommended steroid shots and there was no evidence that Plaintiff attended counseling or other outpatient treatment for her mental impairments. (Tr. 18). Thus, the ALJ found Plaintiff's testimony less than fully credible because other evidence did not support complaints of the severity she alleged. (Tr. 17). *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 543 (6th Cir.2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested.").

Furthermore, the ALJ also properly considered that Plaintiff's treatment was effective and that she did not complain to her doctors about the side effects of any treatment. (Tr. 20). See 20 C.F.R. § 404.1529(c)(3)(iv)-(v)(considering the type, dosage, effectiveness, and side effects of any medication and other treatment a claimant has received for relief of symptoms).

Additionally, the ALJ's credibility assessment reasonably took into account Plaintiff's daily activities. *See* SSR 96-7p (an ALJ may consider statements about a

15

claimant's daily activities while assessing credibility*); Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider a claimant's household and social activities when assessing credibility). Here, the ALJ noted, Plaintiff was able to drive herself places, and "did her own household chores, such as cooking, cleaning, shopping, and laundry" (Tr. 15, 439). Plaintiff reported being independent in self-care and was able to care for her three younger grandchildren; she also was able to use a computer. (Tr. 15, 439). *Bradley v. Sec'y of HHS*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("The evidence in this case indicated that Bradley was not inconvenienced by his pain and was able to perform a variety of activities. Accordingly, the Secretary did not err in concluding that Bradley's complaints of pain were not credible.").

As such, the ALJ did not improperly insinuate that Plaintiff's activities of daily living were equivalent to the demands of full-time work. Yet, the ALJ reasonably considered the fact that Plaintiff's activities were inconsistent with her allegations of total disability. *See Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-814, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, MJ) ("As a matter of law, the ALJ may consider [the claimant's] household and social activities in evaluating her assertions of pain or limitations.") (citing *Blacha*, 927 F.3d at 231).

In light of the foregoing, the undersigned finds that the ALJ's credibility determination properly evaluated the factors outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p. His decision is substantially supported in this regard. Plaintiff's third assignment of error should therefore be overruled.

16

*4. Hypothetical Question*

Plaintiff also perfunctory asserts that the ALJ's hypothetical questions were insufficient because they failed to account for her moderate limitations in concetration, persistence or pace and failed to include the work related limitations found by Dr. Smail.

It is well established that an ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010).

In this case, to the extent Plaintiff argues that her functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. As noted above, the ALJ properly determined that some of Dr. Smail's limitations are not supported by the record and were therefore not adopted. The ALJ posed a complete hypothetical question to the VE–asking her to consider an individual with Plaintiff's age, education, work experience, and RFC–and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994) (where hypothetical accurately described the plaintiff in all

17

relevant respects, the VE's response to the hypothetical question constitutes substantial evidence). Accordingly, the ALJ's decision is substantially supported in this regard.

In sum, the record reflects that the ALJ properly evaluated the medical record, medical opinions, and Plaintiff's own statements regarding her abilities. Accordingly, the ALJ's decision supported by substantial evidence and Plaintiff's asserted errors should be overruled.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) the decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED**.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JANA JOYNER, | Case No. 1:16-cv-507 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).